UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **WALTER BOYCE KIRK, JR.**, *et al*, § <br> § <br> **Plaintiffs,** § <br> v. § <br> § <br> **KEMPER INVESTORS LIFE** § <br> **INSURANCE COMPANY,** § <br> § <br> **Defendant.** § | **CIVIL ACTION NO. H-05-0501** |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's Motion for Summary Judgment on the issue of misrepresentation (Doc. # 27) and Motion for Summary Judgment on the issue of waiver (Doc. # 35). For the reasons set forth below, the Motion for Summary Judgment on the issue of misrepresentation is **GRANTED IN PART** and **DENIED IN PART**, and the Motion for Summary Judgment on the issue of waiver is **DENIED**.

## I. BACKGROUND

This case arises from a life insurance policy issued by Defendant Kemper Investors Life Insurance Company ("KILICO") to Walta G. Kirk ("Ms. Kirk"), on March 14, 2002. Ms. Kirk passed away on August 31, 2003, while the policy was in effect. Because her death occurred within two years of the policy's issuance, KILICO conducted a routine investigation, which revealed that Ms. Kirk had been treated for chest pain, respiratory disorder, mental disorder, and uncontrolled high blood pressure. Ms. Kirk had denied that she had ever had or been treated for any of these conditions in her application for the KILICO life insurance policy. Based on these alleged misrepresentations, KILICO denied payment of any benefits on the policy.

Following Ms. Kirk's death, the primary beneficiary of the KILICO policy, Ashley Robin Kirk, transferred his rights and interest as beneficiary to Plaintiffs Walter Boyce Kirk, Jr. and Clarence Robin Kirk ("Plaintiffs"). Plaintiffs then brought the instant suit, claiming that KILICO breached the insurance contract by refusing to pay the amount owed under the policy. KILICO removed the suit to federal court on the basis of diversity of citizenship and has now filed two motions for summary judgment on Plaintiffs' claims. In the first, KILICO contends that summary judgment is appropriate because it has proved all elements of the defense of misrepresentation. In the second, KILICO urges that Plaintiffs lack standing to bring their claims because Ashley Kirk, the policy's beneficiary, waived his rights to any benefits by cashing KILICO's premium refund check. With respect to KILICO's first motion, the Court finds that KILICO has proved the elements of a misrepresentation defense, except for the element of intent to deceive. Accordingly, summary judgment is granted only as to those elements of misrepresentation that KILICO has proved. With respect to KILICO's second motion, the Court finds that genuine issues of material fact exist as to whether or not Ashley Kirk waived his rights to benefits under the policy, and accordingly, that summary judgment is not warranted.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material facts exists if a reasonable jury could enter a verdict for the nonmoving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Id.*

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party shows that there is a lack of evidence to support the nonmoving party's claims, the nonmoving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (quotation omitted). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

**B. Motion for Summary Judgment on the Issue of Misrepresentation**

Under Texas law, an insurer may avoid liability on a life insurance policy because of the misrepresentation of the insured. *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980). In order to assert a misrepresentation defense, the insurer must prove five elements, including: (1) the making of a representation; (2) the falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive on the part of the insured in making the same; and (5) the materiality of the representation. *Id.*; *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 891 (5th Cir. 1991).

Here, KILICO asserts that the insured, Ms. Kirk, misrepresented her health in her insurance policy application with respect to four medical conditions: chest pain, respiratory

3

disorder, mental disorder, and uncontrolled high blood pressure. As KILICO points out, the application for the KILICO insurance policy specifically asked whether Ms. Kirk had ever had or been treated for a variety of medical conditions, including the four listed above. Ms. Kirk checked the "no" box corresponding to each of the conditions. KILICO contends that medical evidence shows that Ms. Kirk suffered from and had been treated for the four conditions, and that the deposition testimony of Plaintiffs and other family members demonstrates that Ms. Kirk was aware that she suffered from these conditions. KILICO further contends that Ms. Kirk's misrepresentations were material, that it relied upon the misrepresentations in granting Ms. Kirk's application for insurance, and that Ms. Kirk intended to deceive KILICO by answering the questions on the policy application, as to the four medical conditions, in the negative.

Plaintiffs do not deny that KILICO has met its burden of proving a defense of misrepresentation with respect to three of the five required elements, namely, that Ms. Kirk's application contained representations, that these representations were false, and that the representations were material. In their response to KILICO's summary judgment motion, Plaintiffs contend only that the remaining elements, of KILICO's reliance on the representations and of Ms. Kirk's intent to deceive, have not been proved. Plaintiffs urge that genuine issues of material fact with respect to these elements preclude a summary judgment for KILICO. The Court will address the elements of reliance and intent to deceive in turn.

*1. Objections to Summary Judgment Evidence*

First, however, Plaintiffs have raised two objections to KILICO's summary judgment evidence. Plaintiffs initially challenge KILICO's reliance on Ms. Kirk's medical records, arguing that while Plaintiffs have stipulated to the authenticity of the records, they have not stipulated to their admissibility or waived hearsay objections. KILICO responds by pointing to a

4

discussion of the parties' stipulation with respect to the medical records from the February 8, 2006 deposition of Walter Kirk, Jr.[1]  This conversation clarifies that, while Plaintiffs stipulated to the authenticity of the medical records, they expressly reserved their objection to the admissibility of the records, on grounds of hearsay or otherwise.  Under the Federal Rules of Evidence, the authenticity of a particular piece of evidence and its admissibility under a hearsay exception are treated as separate issues.  *See* FED. R. EVID. 803 (listing exceptions to the hearsay rule); FED. R. EVID. 901 (setting forth the requirement of authentication).  Accordingly, it is difficult to see how Plaintiffs' stipulation to the records' authenticity could possibly be construed as a stipulation that the records are not hearsay, particularly when Plaintiffs expressly reserved the right to object to the admissibility of the records on hearsay grounds.  While KILICO contends that it is not relying on any arguably inadmissible hearsay contained within the records, the records themselves are hearsay, absent a stipulation or showing that they fall under the exception for business records or one of the other hearsay exceptions.  The Court need not resolve this objection at this time, however, as it does not rely on the medical records in deciding KILICO's motion for summary judgment on the issue of misrepresentation.

Second, Plaintiffs object to the form of a question posed by KILICO's counsel to Clarence Kirk at his deposition.  With respect to Ms. Kirk's suffering from chest pains and having a respiratory disorder, Clarence Kirk was asked, "[t]hat was something she was aware of,

---

[1] According to KILICO, the following exchange took place:
>MR. SPELLACY [counsel for KILICO]:  Bruce, while we're on this, just so I'm clear in understanding your stipulation, I agree that you are not stipulating to the admissibility of everything contained in these records for hearsay, right?
>MR. ROKOHL [counsel for Plaintiffs]:  That's correct.
>MR. SPELLACY:  Just so we're clear, you are not saying there is some privilege or something that prohibits the admission of these records but there may be hearsay statements in here that you want to –
>MR. ROKOHL:  That's exactly right.  It goes primarily to hearsay, but there is no privilege that I'm going to assert or anything like that.

*See* Def.'s Reply at 3 (citing Walter Kirk, Jr. Dep. 80:14-81:9, Feb. 8, 2006).

5

right?" Clarence Kirk Dep. 37:7, Feb. 8, 2006. Plaintiffs object that this question called for Clarence Kirk to speculate as to Ms. Kirk's knowledge. Plaintiffs' objection is **OVERRULED**. Prior to this question, Clarence Kirk testified that he had engaged in conversations with Ms. Kirk about her health, including her chest pains and respiratory disorder. *See* Clarence Kirk Dep. 13:9-18, 14:7-15:7. Because Clarence Kirk had personal knowledge of Ms. Kirk's awareness of her conditions, this question did not call for speculation and was proper.

## 2. Reliance

An insurer's actual knowledge of a misrepresentation by an insured will defeat a defense based upon misrepresentation. *Koral Indus. v. Security-Connecticut Life Ins. Co.*, 802 S.W.2d 650, 651 (Tex. 1990). It is not enough, however, for a party seeking to collect insurance benefits to show that the insurer could have discovered the misrepresentations through due diligence or proper care. *Id.* ("When one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care."). Rather, only actual knowledge on the part of the insurer will prevent the insurer from showing that it relied on a misrepresentation made by the insured. *Id.*

KILICO claims, through the affidavit testimony of its Chief Underwriter, Lynn Patterson, that it did not know of Ms. Kirk's undisclosed medical history relating to chest pain, respiratory disorder, mental disorder, and uncontrolled high blood pressure until its investigation following her death. Patterson Aff. ¶ 3. Plaintiffs assert, on the contrary, that Daphne McIlveen, the KILICO agent who issued the life insurance policy to Ms. Kirk, was a close friend of Ms. Kirk and her family and was aware of Ms. Kirk's health conditions. Plaintiffs contend that

6

McIlveen's knowledge should be imputed to KILICO, and that a genuine issue of fact thus exists with respect to KILICO's reliance on the misrepresentations in Ms. Kirk's application.

Plaintiffs are correct that the knowledge of an agent acquired in the performance of her duties is imputable to the principle. *Odom v. Ins. Co. of the State of Penn.*, 441 S.W.2d 584, 591 (Tex. Civ. App.—Austin 1969), *aff'd*, 455 S.W.2d 195 (Tex. 1970); *So. Farm Bureau Cas. Ins. Co. v. Allen*, 388 F.2d 126, 129 (5th Cir. 1967). KILICO does not dispute that McIlveen acted as its agent in issuing the life insurance policy to Ms. Kirk. Accordingly, McIlveen's knowledge at the time of the policy's issuance will be imputed to KILICO. Plaintiffs' contention that McIlveen had knowledge of Ms. Kirk's misrepresented health conditions at the time that she issued the policy, however, does not find sufficient support in the evidence presented.

First, Plaintiffs have failed to produce evidence showing that McIlveen knew of Ms. Kirk's ailments at the time that she issued the insurance policy in March 2002. Plaintiffs point out that McIlveen and Ms. Kirk were close friends, and that McIlveen attended many Kirk family functions, from approximately 1998 until 2003. *See* McIllveen Dep. 25:6-26:19, 28:17-24, June 14, 2006; Clarence Kirk Aff. at 1. This, of course, encompasses the period of time prior to the issuance of the insurance policy in March 2002. That McIllveen was friends with Ms. Kirk and attended Kirk family functions, however, does not demonstrate that McIllveen was necessarily familiar with Ms. Kirk's particular medical conditions prior to March 2002. Plaintiffs also assert that, between 1999 and March 2002, McIllveen and Clarence Kirk discussed Ms. Kirk's taking the drug Phen-fen to lose weight and eventually filing a lawsuit and receiving a sizable settlement from the drug's manufacturer and distributors because the medicine had caused Ms. Kirk to have health problems. Clarence Kirk Aff. at 2. This, likewise, does not demonstrate that McIlveen was familiar with Ms. Kirk's particular health problems prior to

7

March 2002.  In fact, McIllveen testified that she was unaware of what side effects could be caused by Phen-fen.  McIlveen Dep. 89:23-25.

Plaintiffs additionally point to McIlveen's knowledge that Ms. Kirk had gone to the hospital for chest pains.  *See* McIlveen Dep. 122:7-123:13.[2]  As Plaintiffs themselves acknowledge, however, McIlveen testified that she could not remember when this occurred.  Although she could remember that Ms. Kirk experienced chest pains when she was living in her new home on Whitestone Lane, which Ms. Kirk had purchased in 2001, McIlveen also testified that, "I don't know if it was before or after I sold her that policy."  McIlveen Dep. 122:7-123:13.  With respect to a conversation McIlveen had with Cynthia Naylor regarding Ms. Kirk's heart condition, McIlveen similarly testified that she was not sure if the conversation had occurred prior to March 2002.  McIlveen Dep. 129:13-129:20.  McIlveen's uncertainty as to when she became aware of Ms. Kirk's chest pains and heart condition is not enough to create a genuine issue of fact with respect to KILICO's actual knowledge of Ms. Kirk's condition.

Moreover, Plaintiffs have failed to present evidence showing that McIlveen possessed knowledge relating to each of the four conditions as to which Ms. Kirk misrepresented her condition on her insurance policy application:  chest pain, respiratory disorder, mental disorder, and uncontrolled high blood pressure.  At most, Plaintiffs have demonstrated that McIlveen was aware of Ms. Kirk's chest pain.  Plaintiffs have not pointed to any evidence, however, tending to show that McIlveen had any knowledge of Ms. Kirk's respiratory disorder, mental disorder, or uncontrolled high blood pressure.  On the contrary, when asked about her knowledge of Ms. Kirk's respiratory disorder, McIlveen testified that she was not aware of it.  McIlveen Dep. 112:6-20.  McIlveen likewise testified that, at the time that Ms. Kirk completed the insurance

---

[2] Plaintiffs have not provided the Court with copies of these pages of McIlveen's deposition; but rather, quote these portions of McIlveen's testimony in their response to KILICO's motion.  In the absence of any disagreement by KILICO, the Court will take Plaintiffs' representations of McIlveen's testimony to be accurate and complete.

8

policy application on March 5, 2002, she believed Ms. Kirk's answers to the medical condition questions to be true. McIlveen Dep. 89:12-15, 118:18-23, 136:20-25.

In order to prove the reliance element of its defense of misrepresentation, it is sufficient for KILICO to show that it relied on *any* one of the four misrepresentations made by Ms. Kirk. Thus, to defeat KILICO's showing of reliance, Plaintiffs would need to show actual knowledge on the part of KILICO or McIlveen as to *each* of the four medical conditions. Because Plaintiffs have not presented any evidence that McIlveen was specifically aware of Ms. Kirk's suffering from respiratory disorder, mental disorder, or uncontrolled high blood pressure, they have failed to raise a factual issue as to KILICO's reliance on Ms. Kirk's misrepresentations. The Court therefore finds that KILICO has proved the reliance element of its misrepresentation defense.

### 3. Intent to Deceive

Before reaching the evidence as to Ms. Kirk's intent to deceive KILICO, the Court must resolve the parties' disagreement as to whether the element of intent to deceive can ever be proved as a matter of law in a summary judgment proceeding. As KILICO correctly points out, the Fifth Circuit has interpreted the Texas Supreme Court's decision in *Mayes* as implying that an insured's intent to deceive or induce issuance of an insurance policy can, under Texas law, be established as a matter of law. *Lee v. Nat'l Life Assurance Co. of Canada* ("*Lee II*"), 635 F.2d 516, 517 (5th Cir. 1981) (citing *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612 (Tex. 1980)). Previously, the Fifth Circuit had found that, based on the Texas Supreme Court's decision in *Washington v. Reliable Life Insurance Co.*, intent to deceive could "never be proved as a matter of law to establish the misrepresentation defense in the absence of either a warranty that the facts contained in the application are true or evidence of collusion between the applicant and the

9

insurance agent." *Lee v. Nat'l Life Assurance Co. of Canada* ("*Lee I*"), 632 F.2d 524, 528 (5th Cir. 1980) (citing 581 S.W.2d 153, 160 (Tex. 1979)).

Subsequent to the Fifth Circuit's opinion in *Lee II*, Texas state courts and federal district courts in Texas have disagreed with the Fifth Circuit's interpretation of *Mayes* and its holding that intent to deceive can be established as a matter of law. In *Estate of Diggs v. Enterprise Life Insurance Co.*, the Texas Court of Appeals found that intent to deceive may not be proven simply by showing that an insurance applicant with a long history of health problems falsely stated her health condition on the application. 646 S.W.2d 573, 576 (Tex.App.—Houston [1st Dist] 1982, writ ref'd n.r.e.). Thus, despite finding that it was "inconceivable that any person with [the insured's] medical history could fail to know he was not in good health or fail to know that he was then suffering from a serious heart ailment," the court concluded that the insurer had failed to produced sufficient evidence of the insured's intent to deceive to warrant the trial court's summary judgment. *Id.* at 575-76. The court reached a similar result in *Flowers v. United Insurance Co. of America*, holding that "mere knowledge of one's health condition is insufficient to prove intent to deceive as a matter of law." 807 S.W.2d 783, 786 (Tex.App.—Houston [14th Dist.] 1991, no writ). Although the court noted that a jury might well conclude that the insured's demonstrated knowledge of his health conditions showed that he intended to deceive the insurer when he denied the health conditions on his application, the court declined to hold, as a matter of law, that this was true. *Id.*

Other courts have held that an insured's intent to deceive may not be established at the summary judgment stage. Relying on the decisions of *Mays* and *Diggs*, for example, the Texas Court of Appeals found that "intent to deceive or induce the issuance of an insurance policy can never be proved as a matter of law to establish the defense of misrepresentation." *Cartusciello v.*

*Allied Life Ins. Co. of Tex.*, 661 S.W.2d 285, 288 (Tex. App.—Houston [1st Dist.] 1983, no writ) (finding summary judgment to have been improper); *see also Adams v. John Hancock Mut. Life Ins. Co.*, 797 F. Supp. 563, 568 (W.D. Tex. 1992) (citing *Cartusciello* and denying an insurer's motion for summary judgment for failure to establish intent to deceive by the insured as a matter of law). Similarly, in *Garcia v. John Hancock Variable Life Insurance Co.*, the court noted its inability to find a single, reported Texas case "in which a plaintiff suing for fraud has ever proven the element of intent to deceive as a matter of law in a summary judgment proceeding." 859 S.W.2d 427, 431 (Tex. App.—San Antonio 1993, writ denied). Citing these and other cases, the court in *Bates v. Jackson National Life Insurance Co.* found that a genuine issue of material fact as to the insured's intent to deceive precluded summary judgment, despite evidence of the insured's knowingly false answers to specific questions about his medical history, and despite evidence of his similar misrepresentations in applications submitted to two other insurance companies. 927 F. Supp. 1015, 1019-21 (S.D. Tex. 1996).

The cases cited by KILICO, as support for its contention that intent to deceive can be proved in a summary judgment proceeding by evidence of an insured's knowledge of her medical conditions, are unpersuasive. KILICO first points to the court's statement in *Chesapeake Life Insurance Co. v. Shaka* that "the utterance of a known false statement, made with intent to induce action . . . is equivalent to an intent to deceive." 2006 WL 456251 at *3 (2006) (quoting *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 282 n.7 (Tex. 1994)). As KILICO correctly contends, the court in *Shaka* granted summary judgment for the insurer, finding that medical records and deposition testimony showing that the insured had been aware of his "significant lung problems" satisfied the insurer's burden of proving the insured's intent to deceive. *Id.* In *Shaka*, the court noted that the insured had failed to file any response to the

11

insurer's motion for summary judgment, after being given additional time to do so and after being cautioned that her failure to respond could result in the entry of summary judgment against her. *Id.* at *2. Thus, the court considered the insurer's motion for summary judgment to be uncontested. *Id.* Albeit uncontested, however, the court's finding that the insured's mere knowledge of the falsity of his misrepresentations satisfied the insurer's burden to show his intent to deceive appears to conflict with the cases discussed above. To the extent that *Shaka* contradicts the proposition that intent to deceive may not be proved through summary judgment evidence of the insured's knowledge of the falsity of his or her misrepresentations, this Court respectfully disagrees.

KILICO further relies on *Sharp v. Lincoln American Life Insurance Co.*, for its holding that "[a] fact finder, in comparing the representation made on the insurance application with the insured's knowledge, could determine that the misrepresentation was so outrageous and removed from the truth that it must have been made with the intent to deceive." 752 S.W.2d 673, 676 (Tex. App.—Corpus Christi 1988, writ denied). The fact finder referenced by the court in *Sharp*, however, was a jury; and the question presented in *Sharp* concerned the legal sufficiency of the evidence presented at trial. *Id.* at 674. Thus, *Sharp* has no bearing on whether summary judgment may be appropriate on the issue of an insured's intent to deceive.

Finally, KILICO references the court's finding in *Odom*:

While subjective evidence of the state of mind of [the insured] when he made application for this insurance is now impossible to obtain it is inconceivable that he did not know the falsity of the answers given by him to the questions shown above. If he was a normal human being, and there is no evidence that he was not, he could not have failed to remember that he was involved in two accidents and that he had been convicted of seven moving violations within the past thirty six months. Such answers were, therefore, knowingly false as a matter of law.

12

*Odom v. Ins. Co. of the State of Penn.*, 441 S.W.2d 584, 587 (Tex. Civ. App.—Austin 1969), *aff'd*, 455 S.W.2d 195 (Tex. 1970). The Texas Supreme Court has distinguished *Odom* from case like this one, however, on the grounds that *Odom* concerned violations of warranties rather than misrepresentations, and that *Odom* involved strong evidence of collusion between the insured and the insurer's agent. *Washington*, 581 S.W.2d at 160. *See also Bates*, 927 F. Supp. at 1020 (noting that, in *Washington*, the Texas Supreme Court "rejected the insurance company's reliance on the rule of *Odom* to establish the defense of misrepresentation as a matter of law").

Based on the cases set forth above, the Court must conclude that, under Texas law, an insured's intent to deceive may not be proved by summary judgment evidence of the insured's knowledge of their actual health condition or of even substantial disparity between the representations made on the insurance application and the insured's knowledge. Here, KILICO has offered significant evidence that Ms. Kirk was aware that she suffered from chest pain, respiratory disorder, mental disorder, and uncontrolled high blood pressure. *See, e.g.*, Clarence Kirk Dep. 13:9-18, 14:7-15:7, 37:3-13 (detailing conversations with Ms. Kirk regarding her chest pains and respiratory disorder); Walter Kirk, Jr. Dep. 67:10-16 (recounting Ms. Kirk's references to her difficulty breathing). KILICO has also presented evidence that Ms. Kirk worked in a hospital at various times from 1967 until her death, at times taking information from patients as part of the admitting process. *See* Clara Kirk Dep. 16:3-19, Feb. 7, 2006; Cynthia Naylor Dep. 19:18-24, 22:15-20, Feb. 7, 2006. KILICO urges that "Ms. Kirk's misrepresentations were therefore so outrageous and removed from the truth that the inevitable conclusion is that she intended to deceive KILICO." Mot. for Summ. J. at 17.

While a jury might indeed conclude from KILICO's substantial evidence that Ms. Kirk intended to deceive KILICO by knowingly providing false information on her insurance

application, however, this does not warrant a summary judgment that Ms. Kirk possessed the requisite intent to deceive, under Texas law. Thus, KILICO's motion for summary judgment on its defense of misrepresentation is **DENIED**. Because KILICO has proved the other four elements of its misrepresentation defense – that Ms. Kirk made representations on her insurance application, that these representations were false, that KILICO relied on the representations, and that the representations were material – summary judgment is **GRANTED** for KILICO as to these elements. Accordingly, the only issue remaining to be tried, with respect to KILICO's defense of misrepresentation, is Ms. Kirk's intent to deceive.

**C. Motion for Summary Judgment on the Issue of Waiver**

An insurer may also avoid liability under an insurance policy if the beneficiary has waived his rights to policy benefits. Here, the parties agree that KILICO sent Ashley Kirk a letter denying his claim for benefits under Ms. Kirk's life insurance policy in May 2004. The parties agree that KILICO enclosed with the letter a check refunding all of the premiums that had been paid on the policy, and that Ashley Kirk cashed the refund check. KILICO argues that, by cashing the refund check, Ashley Kirk waived his claim against KILICO for benefits under the policy. Plaintiffs contend, on the contrary, that Ashley Kirk lacked the requisite knowledge of his rights under the insurance policy in order to waive them.

"Waiver is the voluntary or intentional relinquishment of a known right." *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991) (emphasis omitted); *see also Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex. 1967) ("Waiver has been frequently defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it."). The application of the doctrine of waiver thus "presupposes full knowledge of [the] existing right." *Mass. Bonding*, 416 S.W.2d at 401; *see also Johnson v.*

14

*Structured Asset Servs., LLC*, 148 S.W.3d 711, 722 (Tex. App.—Dallas 2004, no pet.). It follows, therefore, that KILICO must prove that Ashley Kirk knew of his right to pursue his claim to benefits under Ms. Kirk's policy, and that he intentionally gave up his right to pursue any benefits when he cashed KILICO's refund check.

      KILICO cites two cases for its assertion that a beneficiary's cashing of a premium refund check constitutes waiver of his claim against an insurance company. In the first, an insured cashed a check from the insurer refunding all premiums paid under an insurance policy, after the insured's claim for benefits was denied. *Cates v. Cont'l Cas. Co.*, 366 S.W.2d 126, 127 (Tex. Ct. App.—Dallas 1963, no writ). In *Cates*, the back of the refund check included the following language: "[r]eceived of [the insurer] in the sum of $51.60 in full refund of all premiums paid under Policy No. 2111920, issued by said company, which is hereby surrendered as null and void from date of issue." *Id.* The court held, on the basis of this language, that the refund check constituted an offer to cancel the policy, which the insured accepted by signing the endorsement, cashing the check, retaining the proceeds, and returning the policy to the insured. *Id.* at 128. The court did not discuss the doctrine of waiver in *Cates*, but rather, focused on the contract that resulted from the insured's acceptance of the insurer's offer to cancel or rescind the policy. Because there is no evidence that the letter or the check that KILICO sent to Ashley Kirk contained language similar to that printed on the check in *Cates*, and because there is no suggestion that such an offer and acceptance were made in this case, *Cates* is inapplicable to the discussion of waiver in the case at bar.

      KILICO's second case is more closely analogous to that at issue here, as the court held that an insured waived her claim to benefits by accepting and negotiating an insurer's check refunding the premiums that she had paid on the policy. *Oglesbee v. Nat'l Sec. Fire & Cas. Co.*,

15

788 F. Supp. 909, 914-16 (S.D. Miss. 1992). As in the case at bar, the insurer in *Oglesbee* wrote to the insured, advising her that it was cancelling her policy and enclosing a check refunding the premiums. *Id.* at 912. The insured then cashed the check. *Id.* Upon reviewing the insured's deposition testimony, the court found that she had waived her claim to benefits: "[s]he received a refund of premiums, went to a lawyer and discussed the matter, then cashed the check. Hence, the facts and circumstances of the instant case compel the conclusion that [the insured] had the requisite knowledge and intention for waiver." *Id.* at 915-16. Although the court cited Mississippi cases with respect to waiver, the doctrine of waiver is subject to similar treatment under Mississippi and Texas law. *See id.* at 914 (citing Mississippi case law defining waiver as the voluntary or intentional relinquishment of a known right). Thus, *Oglesbee* provides support for KILICO's contention that a beneficiary may waive his claim against an insurance company by cashing the insurer's premium refund check.

Here, however, the evidence of Ashley Kirk's knowledge of his right to pursue a claim against KILICO at the time that he cashed the refund check is less than clear. At his deposition, Ashley Kirk testified that he understood KILICO's letter to be stating that there was a misrepresentation in Ms. Kirk's policy, and to be giving him a refund check for the policy. Ashley Kirk Dep. 20:20-25, June 14, 2006. Ashley Kirk further testified that:

> Well, I was honestly ignorant of the – I read from what I – well, from what I understood, it seemed like a closed matter. So I didn't honestly didn't dig into it any deeper. I did hand it over to my father, who has more knowledge. You know, he's older, more experienced in these types of legal matters. So I handed it over to him to take a look at it.

Ashley Kirk Dep. 21:2-9. Ashley Kirk also noted that he was surprised and confused by what was written in KILICO's letter, and stated that, "I guess I just assumed according to the

16

technicalities the matter was closed, you know. . . . I was surprised.  As far as my emotional response to receiving it, I was surprised." Ashley Kirk Dep. 22:3-10.

As KILICO points out, Ashley Kirk's testimony shows that he understood that the check enclosed with KILICO's letter represented a refund for the insurance premiums paid on Ms. Kirk's policy.  His testimony also tends to show that he understood KILICO to be denying his claim to benefits under the policy.  His testimony does not demonstrate, however, that he was aware of his right to pursue a claim against KILICO for the insurance benefits, or that he would be giving up this right by cashing the refund check.  On the contrary, Ashley Kirk's testimony that "it seemed like a closed matter" tends to show that he did not appreciate his right to bring a claim against KILICO.  Additionally, while Ashley Kirk gave the letter to his father, who he felt to be more experienced in these types of matters, he did not consult an attorney prior to cashing the check.  KILICO correctly argues that *Oglesbee* does not hold that consultation with an attorney is required in order to waive a right; however, legal advice may be strong evidence of the requisite knowledge for waiver.  *See Oglesbee*, 788 F. Supp. at 915-16.  Such evidence is lacking here, as there is no evidence that Ashley Kirk's father had any legal background or knowledge of the doctrine of waiver, and no evidence that Ashley Kirk ever learned of his right to bring a claim against KILICO for the denied benefits prior to cashing the refund check.

In deciding a motion for summary judgment, the Court is bound to view the evidence in the light most favorable to the nonmovant and to draw all reasonable inferences in that party's favor.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  Viewing the evidence in the light most favorable to Plaintiffs, the Court cannot conclude that Ashley Kirk understood his right to pursue a claim for benefits against KILICO, or that he intentionally waived this right by cashing the refund check.  In light of these issues of material fact with

17

respect to Ashley Kirk's knowledge, summary judgment on the issue of waiver would be inappropriate, and KILICO's motion must be **DENIED**.

### III. CONCLUSION

KILICO's Motion for Summary Judgment on the issue of misrepresentation is **GRANTED IN PART** and **DENIED IN PART**. Although a summary judgment that KILICO has proved misrepresentation is **DENIED**, summary judgment for KILICO is **GRANTED** on four elements of KILICO's misrepresentation defense; namely, that Ms. Kirk made representations on her insurance application, that these representations were false, that KILICO relied on the representations, and that the representations were material. KILICO's Motion for Summary Judgment on the issue of waiver is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 8th day of August, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**